IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DEWAYNE SHELTON,          §
TDCJ #1254161,             §
          Petitioner,      §
                     §
v.                       §        CIVIL ACTION NO. H-09-0500
                     §
RICK THALER, Director,      §
Texas Department of Criminal Justice -  §
Correctional Institutions Division,    §
          Respondent.[1]     §

## **MEMORANDUM AND ORDER**

Texas inmate Dewayne Shelton (TDCJ #1254161, former TDCJ #654289, #597443, #501982) has filed a federal petition for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief from a state court conviction.  The respondent has answered with a motion for summary judgment, arguing that Shelton is not entitled to relief. (Docket No. 15).  Shelton has filed a response.  (Docket No. 36).  Shelton has also filed numerous motions for leave to amend his petition and he has requested a stay, among other things, so that he can pursue additional claims in state court. (Docket Nos. 24-35, 37-38).  After considering all of the pleadings, the state court records, and the applicable law, this Court **grants** the respondent's motion for summary judgment and **dismisses** this case for reasons set forth below.

---

[1]     The petition names Nathaniel Quarterman as the respondent.  Because Quarterman has retired as Director of the Texas Department of Criminal Justice - Correctional Institutions Division, the Court substitutes his replacement, Rick Thaler, as the proper respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I.      BACKGROUND

Shelton is a state inmate incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), who seeks habeas corpus relief in federal court from a state conviction.  According to the state court records, a Harris County grand jury returned an indictment against Shelton in cause number 967797, accusing him of possession with intent to deliver a controlled substance, namely, cocaine.[2]  The State of Texas enhanced that indictment for purposes of punishment with allegations that Shelton had at least two prior felony convictions, making him eligible for an increased sentence as a habitual offender.

Shelton filed a motion for leave to represent himself at trial and, following a hearing on this issue, Shelton waived his right to counsel.  Shelton also waived his right to have a jury preside over his case.  During a bench trial before a visiting judge in the 179th District Court of Harris County, Texas, the State presented evidence that Shelton was arrested after selling cocaine to an undercover officer during a "buy/bust sting" operation.  Shelton testified that the undercover officer was lying and he denied selling drugs.  The trial court found Shelton guilty as charged in the indictment.  During the punishment phase of the proceeding, Shelton conceded that the enhancement allegations in the indictment were true.  In fact, Shelton stipulated that he had at least six prior felony

---

[2]      The record shows that charges were filed against Shelton initially in cause number 955981. *See Clerk's Record*, at 4.  The charges were re-filed in cause number 967797 with the addition of enhancement allegations.  *See id*. at 3.

convictions.[3]  After hearing all of the evidence, the trial court sentenced Shelton to serve

forty years in prison.

On direct appeal, Shelton challenged the factual sufficiency of the evidence in

support of his conviction.   The state court of appeals found that the evidence was

factually sufficient based on the following proof presented at trial:

> At trial, an undercover Houston police officer testified that on July
> 21, 2003, he attempted to purchase cocaine from an unknown homeless
> man. The officer testified that the man got in the officer's car, directed him
> to a hotel, and instructed him to stop outside room number twenty-four.
> When the officer arrived at the specified room number, he honked his horn.
> [Shelton] came out of the room and approached the officer's car. The
> officer told [Shelton] that he wanted to buy fifty dollars of crack cocaine.
> According to the officer, [Shelton] replied that he could get the cocaine if
> the officer would drive him to his source. The officer drove both [Shelton]
> and the unknown man to a nearby house.  [Shelton] accepted fifty dollars
> from the officer and went inside the house. A short while later, [Shelton]
> got back in the officer's car with a plastic bag containing what appeared to
> be crack cocaine.  After the officer left the house, he gave the "bust" signal
> and another officer stopped the car for a traffic violation.  [Shelton] stuffed
> the bag into a pocket in the passenger seat of the car where it was later
> retrieved by the undercover officer.  [Shelton] was arrested at the scene.  A
> criminalist with the Houston Police Department Crime Laboratory testified
> that the bag contained 7.4 grams of a substance that tested positive for
> cocaine.
>
> [Shelton] testified at trial.  He denied possessing the cocaine, but
> admitted to accepting a ride from the undercover officer to a house where
> his uncle was staying. [Shelton] testified that the purpose of the trip was to
> pick up his "A.C. technician card" from his uncle, but that his uncle was not
> there.  [Shelton]'s girlfriend testified that she was in the hotel room with
> [Shelton] on the day of the offense when she received a call from a man

---

[3]     Those prior convictions included theft from a person, robbery, forgery, delivery of a
controlled substance, and two counts of possession of a controlled substance.

3

who identified himself as "Bobby."[4]   The man asked to speak with [Shelton].   After a brief phone conversation, [Shelton] told her that he was going to his uncle's house to get "some kind of card." [Shelton]'s girlfriend said that [Shelton] got in a car with two men and left, and that she had not seen [Shelton] again until the day of trial.

*Shelton v. State*, No. 14-04-00777-CR (Tex. App. ─ Houston [14th Dist.] March 28, 2006) (footnote in original).   Based on this evidence, the court of appeals rejected Shelton's appeal and affirmed the conviction in an unpublished opinion.   *See id*. Thereafter, on September 13, 2006, the Texas Court of Criminal Appeals refused Shelton's petition for discretionary review.

Shelton also challenged his conviction by filing a state habeas corpus application under Article 11.07 of the Texas Code of Criminal Procedure.   In that application, which is dated October 24, 2004, Shelton raised approximately twenty claims.[5]   The Texas

---

[4]   The undercover officer and [Shelton] both testified that the other man in the car had a first name of "Robert" or "Bobby." However, neither knew the man's last name. The undercover officer testified that the man was not an informant and was arrested with [Shelton] and placed in a separate patrol car. The man did not testify, and the State and the undercover officer described the man as "unknown."

[5]   Shelton's claims included the following:  (a) the conviction was obtained with evidence seized in violation of the Fourth Amendment; (b) the prosecution failed to disclose unspecified favorable evidence; (c) the indictment was invalid or defective; (d) the complaint was invalid; (e) he was denied the right to self-representation at a pretrial motion hearing; (f) he was denied a hearing on his motion to suppress prior to trial; (g) the trial court erred by denying his motion to suppress; (h) the trial court erred by overruling an objection; (i) the trial court erred by denying a motion for discovery and inspection of evidence; (j) the defense was denied the right to confront unspecified witnesses; (k) the State knowingly used perjured testimony; (l) the conviction was obtained by use of an "inconsistent statement"; (m) there was insufficient evidence or no evidence to support the conviction; (n) the trial court erred by failing to grant a motion for discovery of the grand jury transcript; (o) there was no formal complaint filed in support of the indictment; (p) the trial court denied him effective assistance of counsel; (q) he was denied an examining trial; (r) the trial court erred by denying him release on

4

Court of Criminal Appeals dismissed that application for lack of jurisdiction, however, because Shelton filed it while his direct appeal was still pending.  *See Ex parte Shelton*, No. 59,557-02 (March 9, 2005).[6]

In a second state habeas corpus application under Article 11.07, which was filed on August 21, 2007, Shelton raised approximately six overlapping claims.   Shelton argued that he was entitled to relief from his conviction for the following reasons:  (1) he was denied his right to counsel; (2) he was denied effective assistance of counsel; (3) his conviction was obtained with evidence that had been unlawfully seized after a warrantless arrest; (4) because the evidence was seized unlawfully, the trial court erred by refusing to grant his motion to suppress; (5) the trial court erred by overruling his objection to the unlawfully seized evidence; and (6) the court reporter's record was inaccurate.  *See Ex parte Shelton*, No. 59,557-03 at 6-64 (Writ No. 967797-B). The state habeas corpus court entered findings of fact and concluded that Shelton failed to allege sufficient facts to show that any of his claims had merit.  *See id*. at 112-13.  The Texas

---

bond prior to trial; (s) the trial court erred by refusing to hold a hearing on his pre-trial application for a writ of habeas corpus; (t) the conviction violates the prohibition against double jeopardy; and (u) he was denied a detention hearing and he was not given the requisite statutory warnings by a magistrate.  *See Ex parte Shelton*, No. 59,557-02 at 7-70 (Writ No. 967797-A).

[6]    The record reflects that Shelton previously filed a motion for leave to file a writ of mandamus, which the Texas Court of Criminal Appeals denied on July 28, 2004.  *See Ex parte Shelton*, No. 59,557-01.

Court of Criminal Appeals agreed and summarily denied relief without a written order. *See id.* (Jan. 21, 2009).[7]

Shelton now seeks a federal writ of habeas corpus to challenge his state court conviction under 28 U.S.C. § 2254.  In that petition, Shelton argues that he is entitled to relief for the following reasons:  (1) the evidence was factually insufficient to support the verdict; (2) the court reporter's record is "simply inaccurate"; (3) he was denied his right to the assistance of counsel; (4) standby counsel interfered with his right to self-representation; and (5) the trial court erred by overruling Shelton's motion to suppress and his objections to the State's evidence.  The respondent has filed a motion for summary judgment, arguing that Shelton fails to show that he is entitled to relief under the federal habeas corpus standard of review.  Shelton disagrees.  The parties' contentions are addressed under the applicable habeas corpus standard, which is set forth below.

## II.    STANDARD OF REVIEW

The respondent's motion for summary judgment must be determined in compliance with the federal habeas corpus statutes.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).  Federal habeas corpus proceedings filed after April 24, 1996 are governed by provisions of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S.

---

[7]    The record shows that Shelton filed another habeas corpus application under Article 11.07, which the Texas Court of Criminal Appeals dismissed on or about February 9, 2009, because it concerned "jail time credit" and not the validity of his underlying conviction. *See Ex parte Shelton*, No. 59,557-04.

320, 336 (1997).  The AEDPA was enacted, at least in part, to ensure comity, finality, and deference to state court determinations by limiting the scope of collateral review and raising the standard for federal habeas relief.  *See Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003) (citations omitted).  As the Supreme Court has explained, the federal habeas corpus statutes amended by the AEDPA, codified at 28 U.S.C. § 2254(d), set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted).  Specifically, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002) (quotation omitted).

To the extent that the petitioner's claims were adjudicated on the merits in state court, the AEDPA standard applies.  For claims adjudicated on the merits, the AEDPA standard provides that a petitioner is not entitled to relief unless he shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 404-08 (2000); *Avila v. Quarterman*, 560 F.3d 299, 304 (5th Cir. 2009).  A state court unreasonably

7

applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. *Brown v. Payton*, 544 U.S. 133, 141 (2005).   Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409.   The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc)).

The deferential AEDPA standard of review applies even where the state court fails to cite applicable Supreme Court precedent or fails to explain its decision.  *See Early v. Packer*, 537 U.S. 3, 7 (2002).  Likewise, a federal habeas corpus court's inquiry under § 2254(d)(1) is not altered where the state court denies relief without a written opinion. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).  For such a situation, a reviewing court (1) assumes that the state court applied the proper "clearly established Federal law"; and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law.  *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

A state court's findings and conclusions are entitled to deference unless the petitioner shows that they are "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2);

*Buntion v. Quarterman*, 524 F.3d 664, 670 (5th Cir. 2008), *cert. denied*, ─ U.S. ─, 129 S.

Ct. 1306 (2009).  A state court's findings of fact are presumed to be correct on federal

habeas review, and the petitioner has the burden of rebutting the presumption of

correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  This presumption

extends not only to express findings of fact, but to the implicit findings of the state court

as well.  *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Summers v.*

*Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir.

2004));  *see also Sumner v. Mata*, 455 U.S. 591, 597 (1982) (holding that findings by a

state appellate court are entitled to the same deference owed to findings by trial courts).

The petitioner's claims, which are construed liberally as required by *Haines v. Kerner*,

404 U.S. 519, 520-21 (1972), are discussed below under this deferential standard.

## III.   DISCUSSION

### A.      Factual Sufficiency

Shelton contends that he is entitled to relief from his conviction because the

evidence was factually insufficient to support the trial court's guilty verdict.  As noted

above, Shelton's challenge to the factual sufficiency of the evidence was rejected on

direct appeal. *See Shelton v. State*, No. 14-04-00777-CR (Tex. App. ─ Houston [14th

Dist.] March 28, 2006, pet. ref'd).  The respondent correctly notes that any challenge to

the factual sufficiency of the evidence is not cognizable on federal habeas corpus review.

A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks

only whether a constitutional violation infected the petitioner's state trial.[8]  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  Under Texas law, evidence is factually insufficient as a matter of law if the proof adduced at trial does not conform to the elements listed in the jury charge.  *See Brown v. Collins*, 937 F.2d 175, 176 (5th Cir. 1991).  This determination is one based on state evidentiary law and, therefore, presents no issue of "constitutional caliber."  *Id.*; *see also Pemberton*, 991 F.2d at 1223 (explaining that state evidentiary law "has no effect on our review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution").  Because Shelton's challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable for this claim.

---

[8]   On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard.  *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted).  This standard requires only that a reviewing court determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319.  Shelton, who was convicted following a bench trial, does not challenge the legal sufficiency of the evidence here.  The record further reflects that Shelton did not challenge the legal sufficiency of the evidence on direct appeal in state court.  Thus, as the respondent correctly notes, any challenge to the legal sufficiency is unexhausted and barred by the doctrine of procedural default.  (Docket No. 15, at 13).

### B.        Inaccuracies in the Court Reporter's Record

Shelton contends that he is entitled to relief from his conviction because the court reporter's record contains errors and is "simply inaccurate." (Docket No. 1, at 7). In his supporting memorandum, Shelton explains that the transcript is inadequate because it was not properly certified in compliance with Texas law as a "verbatim transcript of the stenographic notes of the court reporter who attended trial." (Docket No. 2, at 12). The record refutes this claim.[9] Even assuming that this were true, Shelton's allegation does not state a claim. As the Supreme Court has held repeatedly, "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Shelton complains, nevertheless, that the appellate court's decision to affirm his conviction is incorrect because the court reporter's record misstates the evidence. Although Shelton concedes that he does not have a copy of the entire transcript, he complains that the record contains inaccuracies which were "fatal" to his appeal. (Docket No. 2, at 12). Shelton disputes much of the testimony given by the undercover officer

---

[9]        Portions of the Court Reporter's Record were certified by Pamela Knobloch, as Official Court Reporter for the 179th District Court of Harris County, Texas, who transcribed most of the pre-trial proceedings. Shelton's trial before Judge Delaney was transcribed by a different court reporter, Walter N. Johnson, who was then acting as Deputy Official Court Reporter for the 179th District Court. According to the exhibits, Johnson failed to file a timely copy of the trial transcript with the state appellate court, prompting more than one show cause order. During a hearing held on July 27, 2005, the trial court heard testimony that more than one transcript had been delayed as the result of Johnson's illness and hospitalization. *See Court Reporter's Record*, Hearing, July 27, 2005, at 10. Johnson testified at that hearing that he had a draft of Shelton's transcript that was almost ready to file. *See id.* at 9-10. The transcript was provided and it is certified by Johnson.

who testified at trial.  Arguing that all of the facts relied on by the State in its appellate brief are "untrue," Shelton insists that the evidence introduced at trial was insufficient to prove his guilt. (*Id.* at 12-14 & Exhibit M; Docket No. 36, at 10-13).

Shelton, who was represented by counsel on direct appeal, did not object to the accuracy of the transcript or the validity of the court reporter's certification during his appellate proceeding.  To the extent that he complains that the State's version of the facts is inaccurate, as presented in the appellate brief, his complaint is really a challenge to the factual sufficiency of the evidence.  This type of claim is not cognizable on federal habeas corpus review for reasons set forth above.

Moreover, the Court notes that Shelton testified on his own behalf during the guilt/innocence phase of the trial and that he had ample opportunity to dispute the State's evidence.  *See Court Reporter's Record*, Guilt-Innocence Phase of Bench Trial, Aug. 9, 2004, at 70-85.  Shelton also presented testimony from his girlfriend, Paula Simon.  *See id.* at 86-90.  Shelton takes no issue with the court reporter's transcription of *his* evidence.  Rather, he only disputes the accuracy of the testimony given by the State's witnesses.  To the extent that Shelton disagrees with the testimony given by the State's witnesses, the trial court found that he was guilty beyond a reasonable doubt and the state court of appeals found that the evidence was factually sufficient.  Shelton has not met his burden to refute these findings with clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  Accordingly, these findings are presumed correct on federal habeas corpus review.

Shelton's conclusory allegations do not establish that the transcript is inaccurate or that the trial court's guilty finding was entered without sufficient evidence. Absent evidence in the record, a federal habeas corpus court cannot consider a petitioner's "bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citing *Woodard v. Beto*, 447 F.2d 103 (5th Cir.), *cert. denied*, 404 U.S. 957 (1971)). The Fifth Circuit has repeatedly emphasized that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross*, 694 F.2d at 1012 (citing *Schlang v. Heard*, 691 F.2d 796, 798 (5th Cir. 1982) (collecting cases)). Shelton's unsupported allegations are insufficient to demonstrate a constitutional violation and they are likewise insufficient to show that the state court's decision to deny relief was somehow based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). Therefore, Shelton is not entitled to relief on this claim.

## C.    Right to Counsel

Shelton contends that he is entitled to relief from his conviction because his appointed counsel had a "conflicting interest" and the trial court refused to appoint suitable substitute counsel or inquire as to the source of the "conflict." As a result, Shelton complains that he was forced to represent himself and that he was denied his constitutional right to counsel at his trial. The respondent contends that this claim is without merit and that habeas corpus relief is not warranted.

13

The Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI.  Well-established Supreme Court precedent teaches that, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings." *Montejo v. Louisiana*, — U.S. —, 129 S. Ct. 2079, 2085 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227-28 (1967); *Powell v. Alabama*, 287 U.S. 45, 57 (1932)). Once it has attached, the "right to counsel" guaranteed by the Sixth Amendment is construed as "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *see also Strickland v. Washington*, 466 U.S. 668, 684-86 (1984).  If a defendant has a constitutional right to counsel, he also has a corresponding right to counsel that is free from the active representation of conflicting interests, such as may arise in cases of multiple concurrent representation.  *See Mickens v. Taylor*, 535 U.S. 162, 175 (2002) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).  Nevertheless, it is "beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as the relinquishment of the right is voluntary, knowing, and intelligent." *Montejo*, — U.S. at —, 129 S. Ct. at 2085 (citing *Patterson v. Illinois*, 487 U.S. 285, 292 n. 4 (1988); *Brewer v. Williams*, 430 U.S. 387, 404 (1977); *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).  Thus, the Supreme Court has recognized that the Sixth Amendment includes a competent criminal defendant's right to represent himself at trial.  *See Faretta v. California*, 422 U.S. 806, 835-36 (1975).

14

The record in this case shows that Shelton was afforded three different appointed attorneys. The trial court appointed counsel Sherra Miller to represent Shelton on July 24, 2003, shortly after his arrest on July 21, 2003. *See Clerk's Record*, at 5-9. Miller filed a motion to withdraw after Shelton refused to work with her and filed a grievance against her with the State Bar of Texas. *See id*. at 17. The trial court granted the motion and appointed a new attorney, Clint Greenwood, for Shelton on October 10, 2003. *See id*. at 16. Greenwood moved to withdraw shortly thereafter, citing similar reasons as those given by Miller.[10] *See id*. at 18-19. The trial court granted the motion to withdraw and appointed a third attorney, Ronald Hayes, to represent Shelton on November 24, 2003. *See id*. at 29.

The record shows that, while he was represented by Hayes, Shelton filed numerous motions on his own behalf. *See Clerk's Record*, at 25-28, 69-101, 106-195. Shelton also filed a grievance against Hayes. When Hayes refused to withdraw, Shelton asked him to prepare a motion for leave to proceed *pro se*. *See id*. at 97, 196-97; *see also* Docket No. 2, Exhibit Y (correspondence between Hayes and Shelton). The trial court held a hearing on Shelton's motion for self representation on July 27, 2004, inquiring as to Shelton's age, education, ability to communicate, and his legal training or experience. *See Court Reporter's Record*, Motion Hearing on July 27, 2004. The trial court also

---

[10]   According to Greenwood, Shelton became abusive during a consultation on October 10, 2003, shouting at the top of his lungs, "You punk ass bitch. Suck my dick." (Docket No. 2, Exhibit X). Because Shelton refused to cooperate, Greenwood prepared a motion to withdraw. (*Id.*).

inquired whether Shelton understood the charges against him and his legal rights, including the right to have counsel appointed to assist him free of charge and the ramifications of waiving the right to counsel. *See id*. Shelton replied that he did and insisted that he wanted to represent himself without the help of appointed counsel. *See id*. at 10-11.

In addition to the oral admonishments, the trial court advised Shelton in writing of the dangers and disadvantages of self-representation pursuant to *Faretta v. California*, 422 U.S. 806, 835 (1975). *See Clerk's Record*, at 198-99. At the close of the hearing, Shelton stipulated as follows:

> The Court has advised me of my right to representation by counsel in the charges pending against me. The Court further advised me that if I were unable to afford counsel, an attorney would be appointed for me free of charge. Understanding my right to have counsel appointed for me free of charge if I am financially unable to employ counsel, I wish to waive that right. I further request the court to allow me to proceed with my case without an attorney being appointed for me. Wishing to proceed *pro se*, I waive my right to counsel.

*Clerk's Record*, at 199. The trial court found that Shelton had "sufficient age, background, and education to understand the implications and dangers of self-representation." *Id.* The trial court further found that Shelton understood the charges against him as well as his obligation to comply with the rules of evidence and procedure. *Id.* Accordingly, the trial court granted Shelton's motion to waive his right to counsel and allowed him to proceed *pro se*. *Id.*

After granting Shelton leave to proceed *pro se*, the trial court retained Ronald Hayes to act as standby counsel. *See Court Reporter's Record*, Motion Hearing on July 27, 2004, at 13. In doing so, the trial court specifically enquired whether there was any problem that would prevent Hayes from fulfilling this obligation to serve as standby counsel and to assist Shelton to the best of his ability:

> COURT:    Well, Mr. Hayes, let me ask you this: This gentleman says he's filed a grievance on you. Is there anything presently that will keep you from honoring the Court's appointment?
>
> HAYES:    No, sir.
>
> COURT:    And giving, if asked, your best legal advice, whatever it might be?
>
> HAYES:    No, sir. There is nothing to prevent that.
>
> COURT:    There is nothing that you would not – if asked, that you would not do as a volunteer?
>
> HAYES:    Doesn't hurt my feelings at all.

*Id.* at 11-12. A bench trial commenced soon thereafter on August 9, 2004, with Hayes acting as standby counsel. *See Court Reporter's Record*, vol. 6 of 9.

This record, which shows that Shelton voluntarily, knowingly, and intelligently waived his Sixth Amendment right to counsel, does not disclose a constitutional violation. Shelton has alleged that his waiver of the right to counsel was involuntary because his appointed counsel's "conflicting interest" forced him to proceed *pro se*. The record, however, does not reflect that any of Shelton's appointed attorneys labored under

17

an actual conflict of interest.[11]   Likewise, Shelton's conclusory allegations do not overcome the validity of his waiver or his assertion in open court that he wished to proceed *pro se*.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994) ("Although their attestations to voluntariness are not an absolute bar to raising this claim, appellants face a heavy burden in proving that they are entitled to relief because such testimony in open court carries a strong presumption of verity.").

The record of these proceedings shows that Shelton, who insisted on representing himself, had access to standby counsel during his trial and that he was not denied the assistance of counsel at any time.  Based on this record, Shelton fails to show that the trial court denied him the right to counsel.  Shelton further fails to show that the state court's decision to deny relief was contrary to or involved an unreasonable application of clearly established Supreme Court precedent.  Accordingly, Shelton is not entitled to relief on this claim.

### D.    Right to Self-Representation

---

[11]     Shelton's conclusory allegation that his standby counsel had a "conflicting interest," is insufficient to impugn his criminal conviction. *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980). To demonstrate a violation of his Sixth Amendment rights, a defendant must establish that "an actual conflict of interest adversely affected his lawyer's performance." *Id.*   Accordingly, there must be proof that (1) counsel actively represented conflicting interests and (2) an actual conflict of interest adversely affected his performance. *Blankenship v. Johnson*, 118 F.3d 312, 318 (5th Cir. 1997) (citing *Cuyler*, 446 U.S. at 348); *see also Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir.1995) (en banc). "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim . . . ." *Cuyler*, 446 U.S. at 350. Shelton has not met that burden here.

Shelton contends that he is entitled to relief from his conviction because his standby counsel interfered with his right to self-representation. In particular, Shelton objects that his standby counsel (Ronald Hayes) interfered with his right to proceed *pro se* at a pretrial motion hearing held before a visiting judge (the Honorable Paul Murphy) when he offered the following information about a point of local procedure:

SHELTON:  . . . I filed a motion to suppress.

COURT:  When did you file that?

SHELTON:  I thought it would be here this morning, but it may not.  But I do have a copy of it with me.

COURT:  Are you aware of any Motion to Suppress?

HAYES:  Judge, only a conversation that I had with Mr. Shelton in which he informed [me] that he did intend to file one, that conversation taking place, I believe, Wednesday and possibly Thursday of this week.  I have not seen . . .

COURT:  I haven't run across it.

HAYES:  It's not in the clerk's file.

COURT:  Let me see it, Mr. Shelton.

STATE:  The state has not received a copy.

COURT:  State waives any requirement that it's received this morning?

STATE:  Yes, your honor.  The state has reviewed the copies that are inside the Court's file.

HAYES:  *Judge, just for a point of information, the Court – it's my understanding that it's Judge*

> *Wilkinson's policy to carry a Motion to Suppress with the trial and not rule on it at this time. I informed Mr. Shelton of that; and I don't know whether he understood it or not, but that's been by experience with Judge Wilkinson.*

COURT:     Well, if that's his policy, Mr. Shelton, I'm going to rule that; therefore, apparently a copy of what you heretofore filed will be taken with the case. You understand what that means?

SHELTON:  Yes, sir.

COURT:     That means if at the trial of this case the allegations that you allege in this Motion to Suppress are substantiated by the evidence in the case, that you can make a motion outside the presence of the jury, if you wish, or your standby attorney then, that that [sic] evidence be suppressed; and the Court, based on the evidence at the trial of your case, will either grant it or deny it. So, that's what it means by taking it with the case.

        Now, I'm going to hand this back to you because it's not signed by you. It's not filed with the Court. Hopefully, when your case is tried, it will be signed or the signed copy will be present in the Court's file.

SHELTON:  Yes, sir.

COURT:     But my ruling is that it will be taken with the case.

SHELTON:  Yes, sir.

*Court Reporter's Record*, Pretrial Motion Hearing dated August 6, 2004, at 4-6 (emphasis added). The trial commenced several days later, on August 9, 2004, before a different

visiting judge (the Honorable John M. Delaney), who denied Shelton's motion to suppress during the trial.

As outlined above, Shelton voluntarily waived his right to counsel and requested leave to proceed *pro se*. In *Faretta v. California*, 422 U.S. 806, 807 (1975), the Supreme Court held that an accused has a Sixth Amendment right to self-representation when he knowingly and intelligently waives the right to counsel. The trial court may terminate self-representation due to abuse or misconduct and it has discretion to appoint standby counsel, even over the defendant's objection. *See id*. at 834 n.46. Standby counsel's role, however, is subject to certain limitations. Standby counsel may not interfere with a criminal defendant's right to represent himself, which encompasses the defendant's right "to have his voice heard." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). In that respect, "[t]he *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id*.

Shelton complains that his standby counsel's comments interfered with his desire to have a hearing on his motion to suppress prior to the trial. To determine whether standby counsel's participation improperly infringed on the defendant's right to self-representation, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id*. at 177. To preserve this right, the

*McKaskle* Court recognized the following limitations on the extent of standby counsel's unsolicited participation:

> First, the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decision, or to control the questioning of witnesses, or to speak *instead* of the defendant on any matter of importance, the *Faretta* right is eroded.

> Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself.

*Id*. at 178 (emphasis in original); *see also Lefevre v. Cain*, — F.3d —, 2009 WL 3429509 (5th Cir. 2009) (repeating the test established by *McKaskle v. Wiggins*).

As the respondent notes, the record does not reflect that Shelton lodged any objection to above-referenced participation by his standby counsel.  Thus, it appears that Shelton acquiesced to his counsel's participation in the pretrial matter.  *McKaskle*, 465 U.S. at 182-83.  Further, the disputed comments by standby counsel involved mechanical or technical instructions to a visiting judge concerning local policies typically followed by the presiding judge of that court.  Shelton fails to show that the information supplied by standby counsel somehow usurped his control of the case or interfered with the presentation of his defense.  The Supreme Court has recognized that a defendant's rights to proceed *pro se* are not infringed when standby counsel "merely helps to ensure the defendant's compliance with basic rules of courtroom protocol or procedure."  *Id*. at 183.

22

In such a case, "[t]he likelihood that the defendant's appearance in the status of one defending himself will be eroded is also slight, and in any event it is tolerable." *Id.*

More significantly, the complained of remarks by standby counsel were made during a pretrial hearing before a visiting judge.  As the respondent notes, Shelton's case was not tried before a jury.  Shelton waived a jury trial and elected to proceed with a trial to the bench.  As the Supreme Court has observed, a trial judge "must be considered capable of differentiated the claims presented by a *pro se* defendant from those presented by standby counsel."  *Id.* at 179 (citations omitted).  "Accordingly, the appearance of a *pro se* defendant's self-representation will not be unacceptably undermined by counsel's participation outside the presence of the jury."  *Id.*  Under these circumstances, Shelton cannot show that his standby counsel's remarks destroyed in any way the jury's perception that he was representing himself.  Shelton has not demonstrated a violation of his right to self-representation and he has not shown that the state court's decision to reject this claim was objectively unreasonable.  Accordingly, he is not entitled to relief on this claim.

### E.    Evidentiary Ruling

Shelton contends that he is entitled to relief from his conviction because the trial court erroneously overruled his motion to suppress and other objections to the State's evidence.  Shelton appears to claim that the evidence against him was admitted improperly because it was seized following an illegal traffic stop in violation of the Fourth Amendment.  The respondent argues that this claim is without merit.

To the extent that Shelton challenges the validity of the search and seizure under the Fourth Amendment, federal habeas corpus review is precluded by the decision in *Stone v. Powell*, 428 U.S. 465 (1976). In that decision, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494. The Fifth Circuit has since interpreted an "opportunity for full and fair litigation" to mean just that: "an opportunity." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (citing *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)), *cert. denied*, 537 U.S. 1196 (2003). "If a state provides the processes whereby a defendant can obtain full and fair litigation of a [F]ourth [A]mendment claim, *Stone v. Powell* bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes." *Id.*

Texas affords a process for criminal defendants to file a motion to suppress under Article 28.01 of the Texas Code of Criminal Procedure. The record shows that Shelton filed two motions to suppress the evidence in this case, one prior to trial and a second motion on the day of trial. *See Clerk's Record*, at 204-09; 212-16. Shelton re-urged his motions at trial, arguing that the evidence should be suppressed because his arrest lacked probable cause. *See Court Reporter's Record*, Guilt-Innocence Phase of Bench Trial, at 62-63. After hearing the undercover officer's testimony and argument from Shelton, the trial court overruled Shelton's objections and denied his motion to suppress. *Id.* at 63.

Although Shelton did not do so, he could have challenged the trial court's ruling on direct appeal. This is sufficient to trigger the *Stone* bar. *See Janecka*, 301 F.3d at 320; *see also Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006) ("absent a showing that . . . Texas courts systematically and erroneously apply the state procedural bar rule to prevent adjudication of Fourth Amendment claims," the *Stone* bar obtains). Therefore, any Fourth Amendment claim by Shelton is precluded from federal habeas review.

To the extent that Shelton faults the trial court's evidentiary rulings on other grounds, the admissibility of evidence is a matter governed by state law. Even assuming there was an error, an alleged violation of state law does not merit federal habeas corpus relief. *See McGuire*, 502 U.S. at 67-68. A federal habeas corpus court will not grant relief from errors in a state trial court's evidentiary rulings, if any, unless those errors resulted in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause. *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (citing *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983)).

Here, Shelton complains that the evidence against him should have been suppressed because it was seized following an arrest that lacked probable cause. As the respondent notes, the record establishes ample cause in this instance. In that respect, an undercover officer testified that he witnessed Shelton accept payment in exchange for the sale of crack cocaine. After Shelton produced the drugs, other officers who were conducting surveillance effected a traffic stop of the undercover officer's vehicle and arrested Shelton, who was then a passenger, for possession with intent to deliver a

controlled substance.  The cocaine was recovered from an envelope that Shelton had attempted to hide inside the undercover officer's vehicle.  Based on this record, Shelton fails to show that he was arrested without probable cause or that the trial court erred by denying his motion to suppress.

Shelton does not demonstrate that the trial court violated state law and he further fails to establish that his trial was rendered unfair as a result.  Absent a showing that his trial was fundamentally unfair, Shelton does not demonstrate that the state court's decision to deny relief was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent.  Accordingly, Shelton is not entitled to a federal writ of habeas corpus on this issue.  Shelton does not otherwise show that he is entitled to habeas corpus relief.  Accordingly, the respondent's motion for summary judgment will be granted.

## IV.   SHELTON'S MOTIONS

Shelton has filed numerous motions for leave to amend his petition.  He has also filed more than one request for a stay of these proceedings so that he can return to state court. Shelton's motions will be denied for reasons set forth briefly below.

### A.   Leave to Amend

Shelton has filed several motions for leave to amend his habeas corpus petition.  In one of the proposed amendments, Shelton repeats his claim that the trial court denied him the effective assistance of counsel by refusing to appoint an attorney.  (Docket Nos. 24-25).  In two other proposed amendments, Shelton repeats his claim that standby counsel

Ronald Hayes had an "actual conflict of interest" because Shelton had filed a grievance against him.  (Docket Nos. 30, 35).  Another proposed amendment attempts to bolster his claim that officers arrested him in violation of the Fourth Amendment.  (Docket No. 37).

Shelton's motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure, which provides as follows:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served.   Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

FED. R. CIV. P. 15(a).  The decision on whether to grant or deny a request for leave to amend is subject to review for abuse of discretion. *See Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999).

Shelton's pending motions for leave to amend were filed after the respondent had already submitted a responsive pleading.  Most of the allegations that are presented in the form of proposed amendments are repetitive and have been considered already.  The Court has carefully considered the proposed additional allegations by Shelton and concludes that none of them merit relief for the same reasons outlined above.  The Fifth Circuit has held that it is within a district court's discretion to deny a motion to amend if it is futile. *See J.R. Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (citing *Martin's Herend Imports*, 195 F.3d at 771; *Leffall v. Dallas Indep. Sch. Dist.*, 28

F.3d 521, 524 (5th Cir. 1994)).  Because Shelton's proposed allegations would be futile, his motions for leave to amend will be denied.

### B.      Stay or Abate

Shelton has also filed a motion to stay and abate this case so that he can return to state court and pursue additional review of his claims. (Docket Nos. 26-27, 33-34). Shelton apparently seeks a stay so that he can return to state court and re-file his first state habeas corpus application, which the Texas Court of Criminal Appeals dismissed for lack of jurisdiction.  *See Ex parte Shelton*, No. 59,557-02 (March 9, 2005).  Because the Texas Court of Criminal Appeals did not address this application on the merits, Shelton seeks leave to re-file this application in state court so that he can exhaust his remedies with respect to the claims that he raised in that proceeding.  (Docket Nos. 28, 29, 32).

This Court has the discretion to either abate or dismiss a federal habeas action pending resolution of state habeas proceedings.  *See Brewer v. Johnson*, 139 F.3d 491, 493 (5th Cir. 1998).  The Supreme Court has recognized, however, that staying a federal habeas corpus proceeding has the potential to undermine the AEDPA's "objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings" as well as the AEDPA's "goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition."  *Rhines v. Weber*, 544 U.S. 269, 276 (2005).  Thus, a stay is proper only in "limited circumstances" when the district court finds that: (1) there was good

cause for the failure to exhaust the claim; (2) the claim is not plainly meritless; and (3) there is no indication that the failure was for purposes of delay.  *See id*. at 277.

The record shows that Shelton filed two state habeas corpus applications.  After his first was dismissed for lack of jurisdiction on March 9, 2005, Shelton fails to explain why he did not re-file these claims in his second application that he submitted on August 21, 2007.  To the extent that he failed to exhaust these claims properly, Shelton fails to demonstrate good cause for his failure to diligently pursue relief in state court.  Even assuming there was good cause for Shelton's failure to exhaust these claims, the Court concludes that a stay is not warranted because he fails to make a persuasive showing that any of his proposed claims have merit.  Accordingly, Shelton's requests for a stay will be denied.

## V.    CERTIFICATE OF APPEALABILITY

Because the habeas corpus petition filed in this case is governed by the Antiterrorism and Effective Death Penalty Act, codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).   Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   *Miller-El*, 537 U.S. at 336.   Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.   *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).   For all of the reasons discussed above, the court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner stated a valid claim of the denial of a constitutional right. Therefore, a certificate of appealability will not issue.

## VI.    CONCLUSION AND ORDER

Based on the foregoing, the court **ORDERS** as follows:

1.    The respondent's motion for summary judgment (Docket No. 15) is **GRANTED**.

2.    The petitioner's motions (Docket Nos. 24-35, 37-38) are **DENIED**.

3.    The petition for a writ of habeas corpus (Docket No. 1) is **DENIED**, and this case is **DISMISSED** with prejudice.

4.    A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this order to the parties.

SIGNED at Houston, Texas this 4th day of November, 2009.

_____

Kenneth M. Hoyt
United States District Judge

31